# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW WHITFIELD, | : |
| Plaintiff, | : Case No. _____ |
| | : |
| v. | : JURY TRIAL DEMANDED |
| | : |
| ZYNGA INC., MARK PINCUS, FRANK GIBEAU, REGINA E. DUGAN, WILLIAM GORDON, LOUIS J. LAVIGNE JR., CAROL G. MILLS, JANICE M. ROBERTS, ELLEN F. SIMINOFF, and NOEL WATSON, | : COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 |
| Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

**NATURE OF ACTION**

1. On January 9, 2022, Zynga Inc. ("Zynga" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") with Take-Two Interactive Software, Inc. ("Take-Two"), Zebra MS I, Inc. ("Merger Sub I"), and Zebra MS II, Inc. ("Merger Sub II") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, Zynga's stockholders will receive $3.50 in cash and $6.36 in shares of Take-Two common stock per share.

3. On March 14, 2022, defendants filed a S-4 Registration Statement (the "Registration Statement") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the Registration Statement fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities

Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 15 U.S.C. § 78aa because the Registration Statement, which plaintiff alleges to be materially false and misleading, was transmitted by defendants into this District, including to plaintiff, who resides in this District. *See, e.g., Wojtunik v. Kealy*, 2003 WL 22006240, at *5-6 (E.D. Pa. Aug. 26, 2003).

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of Zynga common stock. Plaintiff resides in this District.

9. Defendant Zynga is a Delaware corporation. Zynga's common stock is traded on the NASDAQ under the ticker symbol "ZNGA."

10. Defendant Mark Pincus is Founder and Chairman of the Board of Directors of Zynga (the "Board").

11. Defendant Frank Gibeau is Chief Executive Officer and a member of the Board.

12. Defendant Regina E. Dugan is a member of the Board.

13. Defendant William Gordon is a member of the Board.

14. Defendant Louis J. Lavigne Jr. is a member of the Board.

15. Defendant Carol G. Mills is a member of the Board.

16. Defendant Janice M. Roberts is a member of the Board.

17. Defendant Ellen F. Siminoff is a member of the Board.

18. Defendant Noel Watson is a member of the Board.

19. Defendants identified in ¶¶ 10-18 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

20. Zynga is a global leader in interactive entertainment with a mission to connect the world through games.

21. With massive global reach in more than 175 countries and regions, Zynga has a diverse portfolio of popular game franchises that have been downloaded more than four billion times

22. On January 9, 2022, Zynga's Board caused the Company to enter into the Merger Agreement.

23. The press release announcing the Proposed Merger provides as follows:

Take-Two Interactive (NASDAQ: TTWO) (the "Company") and Zynga (NASDAQ: ZNGA), two leaders in interactive and mobile entertainment, today announced that they have entered into a definitive agreement, under which Take-Two will acquire all of the outstanding shares of Zynga in a cash and stock transaction valued at $9.86 per Zynga share, based on the market close as of January 7, 2022, with a total enterprise value of approximately $12.7 billion. Under the terms and subject to the conditions of the agreement, Zynga stockholders will receive $3.50 in cash and $6.36 in shares of Take-Two common stock for each share of Zynga common stock outstanding at the closing of the transaction. The purchase price represents a premium of 64% to Zynga's closing share price on January 7, 2022.

This transformative combination unifies two global leaders in the interactive entertainment business and establishes Take-Two as one of the largest and most diversified mobile game publishers in the industry, with $6.1 billion in pro-

forma Net Bookings for the trailing twelve-month period ended September 30, 2021.

Both companies have created and expanded iconic franchises, which will combine to form one of the largest and most diverse portfolios of intellectual properties in the sector. Take-Two's labels are home to some of the most beloved series in the world, including *Grand Theft Auto*®, *Red Dead Redemption*®, *Midnight Club*®, *NBA 2K*®, *BioShock*®, *Borderlands*®, *Civilization*®, *Mafia*®, and *Kerbal Space Program*®, while Zynga's portfolio includes renowned titles, such as *CSR Racing*™, *Empires & Puzzles*™, *FarmVille*™, *Golf Rival*™, *Hair Challenge*™, *Harry Potter: Puzzles & Spells*™, *High Heels!*™, *Merge Dragons!*™, *Toon Blast*™, *Toy Blast*™, *Words With Friends*™, and *Zynga Poker*™.

### Management Comments

"We are thrilled to announce our transformative transaction with Zynga, which significantly diversifies our business and establishes our leadership position in mobile, the fastest growing segment of the interactive entertainment industry," said Strauss Zelnick, Chairman and CEO of Take-Two. "This strategic combination brings together our best-in-class console and PC franchises, with a market-leading, diversified mobile publishing platform that has a rich history of innovation and creativity. Zynga also has a highly talented and deeply experienced team, and we look forward to welcoming them into the Take-Two family in the coming months. As we combine our complementary businesses and operate at a much larger scale, we believe that we will deliver significant value to both sets of stockholders, including $100 million of annual cost synergies within the first two years post-closing and at least $500 million of annual Net Bookings opportunities over time."

"Combining Zynga's expertise in mobile and next-generation platforms with Take-Two's best-in-class capabilities and intellectual property will enable us to further advance our mission to connect the world through games while achieving significant growth and synergies together," said Frank Gibeau, CEO of Zynga. "I am proud of our team's hard work to deliver a strong finish to 2021, with one of the best performances in Zynga's history. We are incredibly excited to have found a partner in Take-Two that shares our commitment to investing in our players, amplifying our creative culture, and generating more value for stockholders. With this transformative transaction, we begin a new journey which will allow us to create even better games, reach larger audiences and achieve significant growth as a leader in the next era of gaming."

### Strategic Rationale and Stockholder Value Creation

With Zynga's stockholders receiving approximately 64.5%[1] of the transaction consideration in Take-Two stock, both groups of stockholders will benefit from the combined company's greater scale, enhanced financial profile, and the synergies created through the transaction.

4

**Combined company is well-positioned to capitalize on the interactive entertainment industry's strong tailwinds, including a leadership position in mobile.** The video game sector has experienced rapid growth over the last few years and is now the largest vertical in the entertainment industry[2]. Mobile gaming is the fastest growing segment within the industry, with an estimated $136 billion[2] in gross bookings in 2021, and an expected compound annual growth rate of 8%[2] over the next three years. The transaction is expected to establish Take-Two as a leader in mobile gaming, with mobile expected to comprise over 50% of its Net Bookings in Fiscal Year 2023 (as compared to an estimated 12% in Fiscal Year 2022). The transaction will bolster Take-Two's mobile offerings, which include popular games such as *Dragon City, Monster Legends, Top Eleven*, *Two Dots,* and *WWE SuperCard*, and consist of a diverse array of titles that focus on many of the most popular genres in mobile gaming, including casual, hyper-casual, lifestyle, mid-core, puzzle, social casino and sports games.

**Formation of an industry-leading portfolio, comprising Take-Two's best-in-class intellectual properties and Zynga's renowned mobile titles.** The transaction will create a powerful and diverse portfolio of industry-leading titles that span key platforms and genres across interactive entertainment, developed by some of the most creative and forward-thinking talent within the industry. By sharing best practices and key data insights across the enterprise, the Company is expected to benefit from significant development and publishing synergies, unlock new revenue streams and reach new audiences around the world.

**The combined entity has significantly greater scale,** with $6.1 billion in Net Bookings, and $769 million[3] in Adjusted Unrestricted Operating Cash Flow on a pro-forma basis for the trailing twelve-month period ended September 30, 2021. Looking ahead, the combined company is expected to deliver a 14%[4] compound annual growth rate for Net Bookings (excluding the annual Net Bookings opportunities and any future acquisitions) over the three-year period from Take-Two's Fiscal Years 2021 through 2024.

**Addition of Zynga's mobile titles will expand the Company's base of Recurrent Consumer Spending ("RCS").** Through the addition of Zynga's mobile business, particularly its diversified portfolio of live services and upcoming pipeline of new releases, Take-Two will increase its sources of RCS, a highly-attractive revenue stream that helps reduce volatility across reporting periods that has historically been driven by the cadence of Take-Two's console and PC release slate.
Take-Two has also identified over $500 million of incremental annual Net Bookings opportunities to unlock over time, driven by:

**Creation of new mobile games for many of the iconic franchises within Take-Two's portfolio of intellectual property.** Take-Two has an extensive catalog of commercially and critically successful console and PC titles with engaged and loyal communities of players, and there is a meaningful opportunity to create mobile games and new cross-platform experiences for many of these properties. Zynga's

nearly 3,000 employees include highly-talented mobile developers, paving the way for Take-Two to accelerate this strategic initiative and introduce its iconic intellectual properties across the fastest-growing platform in the industry.

**Ability to optimize RCS by leveraging the collective knowledge across both companies.** Both Take-Two and Zynga have extensive capabilities to engage players through live operations ("LiveOps") and RCS initiatives. By combining resources and proven acumen, the teams at Take-Two and Zynga will deploy best-in-class practices throughout the organization to enhance and grow existing titles across the portfolio. Key opportunities include cross-marketing through a larger, shared customer database and improving game economies through more effective data analytics and machine learning models.

**Other strategic benefits** include the use of Zynga's Chartboost advertising platform, which will improve new user acquisition through better audience targeting and optimize mobile advertising inventory to achieve greater yields; geographic expansion into growth markets across Asia, including India, and the Middle East, among other regions; and an enhanced focus on technological innovation and new business models that will utilize the collective knowledge of forward-thinking talent.

**Take-Two expects approximately $100 million of annual cost synergies** within the first two years after closing, primarily driven by the rationalization of duplicative overhead including corporate general and administrative expenses and public company costs, as well as the benefit of scale efficiencies across the enterprise.

**The acquisition is structured to maintain a strong balance sheet**, including significant annual cash generation. The combined company's strategic and financial flexibility is expected to be greater than each company on a standalone basis, providing Take-Two with the financial resources to continue to invest in talent, development, and innovation, while also pursuing select inorganic growth opportunities.

### Leadership

At the close of the transaction, Strauss Zelnick will continue to serve as Chairman and CEO, and the management team of Take-Two will continue to lead the combined company. Zynga's highly skilled and proven management team, led by Frank Gibeau and Zynga's President of Publishing, Bernard Kim, will drive the strategic direction for Take-Two's mobile efforts and will oversee the integration, and day-to-day operations of the combined Zynga and T2 Mobile Games business, which will operate under the Zynga brand as its own label within the Company. Additionally, Take-Two will expand its Board of Directors to 10 members upon the closing of the transaction to add two members from Zynga's Board of Directors.

**Terms of the Acquisition**

Zynga stockholders will receive $3.50 in cash and $6.36 in shares of Take-Two common stock for each share of Zynga common stock outstanding at the closing. The transaction is valued at $9.86 per share of Zynga common stock based on the market closing as of January 7, 2022, implying an enterprise value of approximately $12.7 billion.

The transaction includes a collar mechanism on the equity consideration, so that if Take-Two's 20-day volume weighted average price ("VWAP") ending on the third trading day prior to closing is in a range from $156.50 to $181.88, the exchange ratio would be adjusted to deliver total consideration value of $9.86 per Zynga share (including $6.36 of equity value based on that VWAP and $3.50 in cash). If the VWAP exceeds the higher end of that range, the exchange ratio would be 0.0350 per share, and if the VWAP falls below the lower end of that range, the exchange ratio would be 0.0406 per share.

Within the collar range, the final number of Take-Two shares estimated to be issued on a fully diluted basis will range between approximately 50.3 million and 58.5 million shares. Upon closing of the transaction, current Take-Two stockholders will own between 67.2% and 70.4% and current Zynga stockholders are expected to own between 29.6% and 32.8% of the combined company on a fully diluted basis, respectively, including the shares associated with expected settlement of Zynga's two outstanding series of convertible notes due 2024 and 2026.

As part of the transaction, Take-Two has received committed financing of $2.7 billion from J.P. Morgan and intends to fund the cash component of the transaction through a combination of cash from its balance sheet as well as proceeds of new debt issuance.

The merger agreement provides for a "go-shop" provision under which Zynga and its Board of Directors may actively solicit, receive, evaluate, and potentially enter negotiations with parties that offer alternative proposals during a 45-day period following the execution date of the definitive agreement, expiring on February 24, 2022. There can be no assurance this process will result in a superior proposal. Zynga does not intend to disclose developments about this process unless and until its Board of Directors has made a decision with respect to any potential superior proposal.

**Approvals and Close Timing**

The transaction, which is expected to be completed during the first quarter of Take-Two's Fiscal Year 2023, ending June 30, 2022, is subject to the approval of both Take-Two and Zynga stockholders and the satisfaction of customary closing conditions, including applicable regulatory approvals.

The transaction has been unanimously approved by the Take-Two and Zynga Boards of Directors. Moreover, each director and executive officer of Take-Two and Zynga have entered into voting agreements to support the transaction.

**Advisors**

J.P. Morgan and LionTree Advisors are serving as financial advisors to Take-Two and Willkie Farr & Gallagher LLP is serving as legal counsel. Goldman Sachs & Co. LLC is acting as financial advisor to Zynga and Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as legal counsel.

24.     On March 14, 2022, defendants filed the Registration Statement, which fails to disclose material information regarding the Proposed Merger.

### Financial Projections

25.     The Registration Statement fails to disclose material information regarding Zynga's, Take-Two's, and the combined company's financial projections, specifically: the line items underlying the financial projections.

26.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

### Financial Analyses

27.     The Registration Statement fails to disclose material information regarding the financial analyses conducted by Goldman Sachs & Co. LLC ("Goldman Sachs"). When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion and the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

28.     Regarding Goldman Sachs' Illustrative Present Value of Future Stock Price Analyses, the Registration Statement fails to disclose: (i) the individual inputs and assumptions

underlying the discount rates and multiples utilized by Goldman Sachs; (ii) the net debt utilized by Goldman Sachs; and (iii) the fully diluted shares utilized by Goldman Sachs.

29. Regarding Goldman Sachs' Illustrative Discounted Cash Flow Analyses, the Registration Statement fails to disclose: (i) the terminal values utilized by Goldman Sachs; (ii) the inputs and assumptions underlying the discount rates and perpetuity growth rates utilized by Goldman Sachs; (iii) the net debt utilized by Goldman Sachs; and (iv) the fully diluted shares utilized by Goldman Sachs.

30. Regarding Goldman Sachs' Selected Precedent Transactions Analysis, the Registration Statement fails to disclose: (i) the net debt utilized by Goldman Sachs; and (ii) the fully diluted shares utilized by Goldman Sachs.

31. Regarding Goldman Sachs' Premia Analysis, the Registration Statement fails to disclose: (i) the transactions utilized by Goldman Sachs; and (ii) the premiums paid in the transactions utilized by Goldman Sachs.

**COUNT I**

**Claim Against the Individual Defendants and Spirit for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

32. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

33. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

34. Spirit is liable as the issuer of these statements.

35. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

36. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

37. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

38. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

39. The Registration Statement is an essential link in causing plaintiff to approve the Proposed Merger.

40. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

41. Plaintiff is threatened with irreparable harm.

### COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

42. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Spirit within the meaning of Section 20(a) of the Exchange Act as alleged herein.

44. Due to their positions as officers and/or directors of Spirit and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

47. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Registration Statement.

48. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

49. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

50. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

51. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: March 18, 2022

**GRABAR LAW OFFICE**

By: _/s/ Joshua H. Grabar_
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*